# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| JZAVELA-ARETHEA KAY-DIU- | § | |
| DOUGHERTY-WILLIAMS, | § | |
|   Plaintiff | § | |
| | § | Civil Action No. _____ |
| vs. | § | |
| | § | |
| U.S. BANK TRUST, NA | § | |
|   Defendant. | § | |

## NOTICE OF REMOVAL

Defendant U.S. BANK AND TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE IGLOO SERIES III TRUST ("U.S. Bank") respectfully notifies the Court pursuant to 28 U.S.C. § 1441(b) and 28 U.S.C. § 1441(c) it has this day removed this action from the 281st Judicial District of Harris County, Texas to the United States District Court for the Southern District of Texas, Houston Division.  In support of such removal, Defendant states as follows:

## THE STATE COURT ACTION

1.      Plaintiff sued U.S. Bank in Cause No. 2019-53348 in the 281st Judicial District Court of Harris County, Texas (the "State Court Action") related to claims involving real property and Plaintiff's attempt to stop the foreclosure of the mortgage on the property.

2.      Plaintiff's Original Petition in the State Court Action was filed on August 4, 2019. Defendant became aware of the State Court Action for the first time on August 4, 2019.

3.      This notice of removal is filed within 30 days of Defendant's notice of the filing of the State Court Action and is timely filed under 28 U.S.C. 1446(b).

## BASIS FOR REMOVAL: DIVERSITY JURISDICTION

4.      This case is a civil action in which the amount in controversy exceeds $75,000.00

---

and the parties are citizens of different states.  Consequently, this Court has original jurisdiction over this case pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1441(b).

## THE AMOUNT IN CONTROVERSY EXCEEDS $75,000.00

5.      The State Court Action, on its face, seeks injunctive relief over, declaratory relief related to and claims related to real property which is the object of the litigation that has a value far in excess of $75,000.00 and the mortgage on that real property that has an unpaid balance far in excess of $75,000.00.  "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 347, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977).  "[W]hen the validity of a contract or a right to property is called into question in its entirety, the value of the property controls the amount in controversy". *Waller v. Prof'l Ins. Corp.,* 296 F.2d 545, 547–48 (5th Cir.1961); *Nationstar Mortgage LLC v. Knox,* 351 F. App'x 844, 848 (5th Cir. 2009).   In the instant case, Plaintiffs are disputing Defendant's rights in the property and requesting damages well in excess of $75,000.00.

## DIVERSITY OF THE PARTIES

6.      The Plaintiff is a resident of Harris County, Texas and is a citizen of Texas.

7.      U.S. Bank is a Delaware trust.

## BASIS FOR REMOVAL: FEDERAL QUESTION JURISDICTION

8.      This is a civil action in which Plaintiff asserts causes of action based upon federal law/statutes on the face of Plaintiff's Live Petition.   Plaintiff's petition contains causes of action and requests relief pursuant to the following federal statutes: 12 CFR 1024.17, 12 CFR 1024.30, 12 CFR 1024.31, 12 CFR 1024.38, 12 CFR 1026.2

9.      This case is a civil action based on a federal questions.  A civil action is based on a

federal question when it "aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  Consequently, this Court has original jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 & 1441(c).

## PROCEDURAL REQUIREMENTS

10.     This action is properly removed to this Court, as the State Court Action is pending within this district and division.  *See* 28 U.S.C. § 1441.

11.     Pursuant to 28 U.S.C. § 1446(a) and Southern District of Texas Local Rule LR 81 this Notice of Removal is accompanied by copies of the following materials:

| Exhibit "1" | All executed process in the case |
| Exhibit "2" | Pleadings asserting causes of action |
| Exhibit "3" | All orders signed by the state Judge |
| Exhibit "4" | The Docket Sheet |
| Exhibit "5" | Index of matters being filed |
| Exhibit "6" | A list of all counsel of record |

12.     Venue is proper in this district because this district and division embrace the place in which the removed action has been pending.

13.     Defendant will promptly file a copy of this notice of removal with the clerk of the state court in which the action has been pending.

WHEREFORE, Defendant removes this action from the 281st Judicial District Court of Harris County, Texas, to the United States District Court for the Southern District of Texas, Houston Division, so that this Federal Court may assume jurisdiction over the case as provided by law.

Respectfully submitted,

ANDERSON ★ VELA, L.L.P.
4920 Westport Drive
The Colony, Texas 75056
214.276.1545 – Telephone
214. 276.1546 – Facsimile

ATTORNEYS FOR DEFENDANTS

By: */s/ Ray L.  Vela*                                    .
    RAY L. VELA
    State Bar No. 00795075
    S.D. Tex. Fed ID No. 20354
    RVela@AndersonVela.com – E-mail
    RICHARD E. ANDERSON
    Texas State Bar No. 01209010
    randerson@abvlaw.com  – e-mail

## **CERTIFICATE OF SERVICE**

I certify that on this the 14th day of August 2019, a true copy of the above document has been delivered in person to the following pursuant to the Federal Rules of Civil Procedure for each party listed below.

ERICK DELARUE                                VIA E-FILING SERVICE AND/OR
2800 POST OAK BLVD, SUITE 4100   VIA E-MAIL:
HOUSTON, TEXAS 77056                   ERICK.DELARUE@DELARUELAW.COM


                                    By:    */s/ Ray L. Vela*_____.
                                             RAY L. VELA

EXHIBIT "1"

ALL EXECUTED PROCESS IN THE CASE


None

## **EXHIBIT "2"**

PLEADINGS ASSERTING CAUSES OF ACTION

See attached

1.     Plaintiffs Original Petition, Application for Injunctive Relief and Request for Disclosures (Filed 08/04/2019)

2.     Defendant's Original Answer (Filed 08/14/2019)

8/4/2019 7:58 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 35674115
By: Carolina Salgado
Filed: 8/5/2019 12:00 AM

CAUSE NO. _____

| | | |
|---|---|---|
| **JZAVELA-ARETHEA DOUGHERTY** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **U.S. BANK TRUST, N.A.** | § | **_____ JUDICIAL DISTRICT** |

## PLAINTIFF'S ORIGINAL PETITION, APPLICATION FOR INJUNCTIVE RELIEF, AND REQUEST FOR DISCLOSURES

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Jzavela-Arethea Dougherty, Plaintiff herein, filing this her Original

Petition, Application for Injunctive Relief, and Request for Disclosures complaining of U.S. Bank

Trust, N.A., Defendant herein, and for causes of action would respectfully show the Court as

follows:

## DISCOVERY

1.    Plaintiff intends to conduct discovery under Texas Rules of Civil Procedure 190.3

(Level 2).

## PARTIES

2.    Jzavela-Arethea Dougherty is an individual who resides in Harris County, Texas

and may be served with process on the undersigned legal counsel.

3.    U.S. Bank Trust, N.A. is an entity formed under the laws of the State of Ohio

which conducts business in Harris County, Texas and may be served with process as follows:

U.S. Bank Trust, N.A.
c/o Corporate officer
800 Nicollet Mall, BC-MN, H190
Minneapolis, MN 55402

## JURISDICTION AND VENUE

5.      The Court has jurisdiction over U.S. Bank Trust, N.A. because this Defendant is an entity formed under the laws of the State of Ohio which conducts business Harris County, Texas.

6.      The Court has jurisdiction over the controversy because the damages are within the jurisdictional limits of the Court. Venue is mandatory in Harris County, Texas because the subject matter of the lawsuit involves real property which is located in Harris County, Texas. Further, all or a substantial part of the events or omissions giving rise to Plaintiff's causes of action against Defendant occurred in Harris County, Texas thus venue is proper under §15.002(a)(1) of the Texas Civil Practice and Remedies Code.

## RELEVANT FACTS

7.      The subject matter of the lawsuit is the real property and the improvements thereon located at 2534 Splintwood Court, Kingwood, Texas 77345 (the "Property").

8.      Jzavela-Arethea Dougherty ("Dougherty") and her ex-husband, now deceased, purchased the Property on or about February 27, 2009. During the process of purchasing the Property, Dougherty's ex-husband executed a Note as well as a Deed of Trust in which Network Funding, L.P. is listed as the Lender.  A true and correct copy of the Deed of Trust is attached hereto as Exhibit "1" and incorporated herein for all purposes.

9.      Upon information and belief, the Note and Deed of Trust were subsequently transferred to Wells Fargo Bank, N.A. ("Wells Fargo").

10.     Unfortunately, Dougherty and her ex-husband began to have marital problems and in 2012 filed for divorce which was finalized in 2013.  In the divorce decree, Dougherty was awarded 75% interest in the Property while her husband retained a 25% interest.  Dougherty immediately put Wells Fargo on notice by sending a copy of decree to her loan representative.

11.      Wells Fargo failed to initiate the necessary process for Dougherty to assume the loan as she would be the responsible for paying the mortgage.  Of course, at the time, Dougherty did not realize this failure would cause her so many problems in the future.  Unfortunately, Dougherty had been un-employed at the time of the divorce which forced her to file a bankruptcy so she could reorganize her debt and keep a roof over her and her son's head.  During the bankruptcy, Dougherty was able to secure a well-paying position which would allow her to pay her mortgage.  The bankruptcy was dismissed in March 2017 and Dougherty reached out to Wells Fargo to discuss payment and or loss mitigation options.  Wells Fargo was cooperative and began the loss mitigation process by reviewing the loan history to determine what options were available to Dougherty; however, upon information and belief, the Note and Deed of Trust was transferred in September 2017 to U.S. Bank Trust, N.A.  ("U.S. Bank") for which BSI Financial Services ("BSI") was the loan servicer.  All contact with Dougherty ceased and with it, her ability to mitigate her position.

12.      Neither U.S. Bank nor BSI reached out to Dougherty to inform her that the loan had transferred until Dougherty received a call from a BSI representative, Scott Hansen ("Hansen"), in February 2018 who informed her that the loan was in default and in the foreclosure process. Dougherty informed Hansen that she had been in the process of obtaining loss mitigation help from Wells Fargo when the loan was transferred so that she could resume making payments on the mortgage.  Hansen responded that since she was not on the mortgage, U.S. Bank/BSI would not be able to speak to her about the loan or be able to offer her any options to save her home.  This shocked Dougherty because Wells Fargo had never mentioned this as a problem. Dougherty told Hansen that she had been awarded the Property by divorce decree in 2013 and, thus, was the owner and had an interest in the Property.  Hansen informed Dougherty that this did

not change U.S. Bank's position.

13.     Over the next year and a half, Dougherty fought tooth and nail with U.S. Bank to be recognized as a successor in interest so that she could receive all the rights and protections of the original borrower.  Dougherty hired several attorneys to help her with this process but U.S. Bank refused to recognize her as a successor in interest and allow her any rights to the mortgage. As such, U.S. Bank refused to speak to Dougherty about the loan or offer her any loss mitigation options as a way to resume making payments on the mortgage.

14.     Then, in July 2019, Dougherty began to receive a barrage on mail from investors wishing to purchase her Property and lawyers offering to represent her to save her home from the coming foreclosure sale.  Dougherty was surprised because she had not received any notice from U.S. Bank informing her that her Property had been posted at a foreclosure sale on August 6, 2019.  Apparently, U.S. Bank posted Dougherty's Property for foreclosure sale without sending her proper and timely notice of default, an opportunity to cure the default, notice of intent to accelerate, notice of acceleration, and notice of foreclosure sale as required by the Texas Property Code thereby violating Dougherty's due process rights as well as the Deed of Trust.

15.     Accordingly, Plaintiff alleges that U.S. Bank has wrongfully posted and is about to wrongfully sell her Property at a foreclosure sale on August 6, 2018 in violation of the Deed of Trust, Texas Property Code, Plaintiff's due process rights, and RESPA.

## CLAIMS

### AGENCY & RESPONDEAT SUPERIOR

16.     Wherever it is alleged that Defendant did anything, or failed to do anything, it is meant that such conduct was done by Defendant's employees, vice principals, agents, attorneys, and/or affiliated entities, in the normal or routine scope of their authority, or ratified by Defendant, or done with such apparent authority so as to cause Plaintiff to reasonably rely that such conduct

was within the scope of their authority. Plaintiff did rely to Plaintiff's detriment on Defendant's representatives being vested with authority for their conduct. Defendant is vicariously liable for the conduct of their employees, vice principals, agents, attorneys, affiliated entities, and representatives of Defendant's affiliated entities by virtue of respondeat superior, apparent authority, and estoppel doctrines.

**FIRST CAUSE OF ACITON:**
**DECLARATORY JUDGMENT**

17.     To the extent not inconsistent herewith, Karen Babel ("Babel") incorporates by reference the allegations made in paragraphs 1 through 16 as if set forth fully herein.

18.     Plaintiff seeks a determination of the rights of the parties pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 37.001 (West).

19.     In particular, Plaintiff seeks a determination that she is a successor in interest as defined under 12 C.F.R. § 1024.31 and is thus entitled to the same rights as the original borrower or consumer.

20.     Additionally, Plaintiff seeks a determination that Defendant was on actual notice that there was a transfer of interest in the Property and that Plaintiff was the successor in interest pursuant to 12 C.F.R. § 1204.38(b)(1)(vi)(A).

21.     Additionally, Plaintiff seeks a determination that Defendant failed to "promptly" communicate with Plaintiff once they were on actual notice that she was a successor in interest as defined by 12 C.F.R. § 1204.38(b)(1)(vi)(A).

22.     Additionally, Plaintiff seeks a determination that Defendant failed to "promptly" request documents, determine the status of Plaintiff, and notify Plaintiff that the servicer has confirmed the her status, has determined that additional documents are required (and what those documents are), or has determined that Plaintiff is not a successor in interest in accordance with

12 C.F.R. § 1204.38(b)(1)(vi)(B) and (C).

23.     Additionally, Plaintiff seeks a determination that she is a successor in interest to the subject Property for purposes of RESPA's mortgage servicing rules and 12 C.F.R. § 1024.17 and a "consumer" for TILA's mortgage servicing rules.  12 C.F.R §§ 1024.30(d) and 1026.2(11).  Thus, Plaintiff is entitled to the same rights as the original borrower or consumer.

## SECOND CAUSE OF ACTION:
## BREACH OF CONTRACT

24.     To the extent not inconsistent herewith, Jzavela-Arethea Dougherty ("Dougherty") incorporates by reference the allegations made in paragraphs 1 through 16 as if set forth fully herein.

25.     The actions committed by U.S. Bank Trust, N.A. ("U.S. Bank") constitute breach of contract because:

A.     There exists a valid, enforceable contract between Dougherty and U.S. Bank;

B.     Dougherty has standing to sue for breach of contract;

C.     Dougherty performed, tendered performance, or was excused from performing her contractual obligations;

D.     U.S. Bank breached the contract; and

E.     The breach of contract by U.S. Bank caused Dougherty's injury.

## THIRD CAUSE OF ACTION:
## VIOLATION OF TEXAS PROPERTY CODE §5.065

26.     To the extent not inconsistent herewith, Jzavela-Arethea Dougherty ("Dougherty") incorporates by reference the allegations made in paragraphs 1 through 16 as if set forth fully herein.

27.     Pursuant to the provisions of the Texas Property Code, the holder of a note must ordinarily give notice to the maker of the holder's intent to accelerate the time for payment as well as notice of acceleration. If the mortgagee intends to accelerate the maturity of the debt, the notice must unequivocally inform the mortgagor of the mortgagee's intention. A proper notice of default must give the borrower notice that the alleged delinquency must be cured; otherwise, the loan will be accelerated and the property will go to foreclosure. Prior to a foreclosure action, the noteholder is also required to give the home owners clear and unequivocal acceleration notice. Effective acceleration requires two acts: notice of intent to accelerate and notice of acceleration.

28.     The actions committed by U.S. Bank Trust, N.A. ("U.S. Bank") constitute violations of the Texas Property Code §5.065 because U.S. Bank never sent proper and timely notice of default, the opportunity to cure the default, notice of intent to accelerate the debt, notice of acceleration, and notice of foreclosure sale which are required in order for U.S. Bank to foreclose on their lien rights to the Property.

### FOURTH CAUSE OF ACTION:
### VIOLATION OF RESPA AND TILA

29.     Successors in interest to property secured by mortgage loans that are covered by the Real Estate Settlement Procedures Act ("RESPA") and Truth In Lending Act ("TILA") now have certain rights under recent amendments to those acts that make it easier for potential successors in interest to communicate with servicers and establish that they are successors in interest regardless of whether or not they assumed the loan.  Servicers now have an obligation to respond when they receive correspondence providing *actual notice* that someone might be a successor in interest and take prompt measures to make that determination. Once the status of a successor in interest is confirmed, the successor in interest is entitled to all the rights and

protections provided by the current mortgage servicing rules under RESPA and TILA.

30.     A "successor in interest" is now defined as "a person to whom an ownership interest in a property securing a mortgage loan subject to this subpart is transferred from a borrower, provided that the transfer is:

> (1) A transfer by devise, descent, or operation of law on the death of a joint tenant or tenant by the entirety;
>
> (2) A transfer to a relative resulting from the death of a borrower;
>
> (3) A transfer where the spouse or children of the borrower become an owner of the property;
>
> (4) A transfer resulting from a decree of a dissolution of marriage, legal separation agreement, or from an incidental property settlement agreement, by which the spouse of the borrower becomes an owner of the property; or
>
> (5) A transfer into an inter vivos trust in which the borrower is and remains a beneficiary and which does not relate to a transfer of rights of occupancy in the property." 12 C.F.R. § 1024.31.

31.     Actual Notice: servicers must have policies and procedures to ensure that they "promptly facilitate communication with any potential or confirmed successors in interest" upon receiving "notice of the death of a borrower or of *any transfer* of the property." 12 C.F.R. § 1204.38(b)(1)(vi)(A) (emphasis added).  Upon receiving the foregoing notice, servicers must then "promptly" request documents, determine the status of the person, and notify the person "that the servicer has confirmed the person's status, has determined that additional documents are required (and what those documents are), or has determined that the person is not a successor in interest." 12 C.F.R. § 1204.38(b)(1)(vi)(B) and (C).

32.     A "potential" successor in interest becomes a "confirmed" successor in interest if the servicer confirms "the successor in interest's identity and ownership interest in a property." 12 C.F.R. § 1024.31.

33.     A "confirmed successor in interest" is now a "borrower" for purposes of RESPA's mortgage servicing rules 12 C.F.R. § 1024.17 and a "consumer" for TILA's mortgage servicing rules. 12 C.F.R §§ 1024.30(d) and 1026.2(11).  Thus, a confirmed successor in interest is entitled to the same rights as the original borrower or consumer.

34.     The actions committed by The Bank of New York Mellon ("BONY") constitute violations of RESPA and TILA because BONY had actual notice of a transfer of interest in the Property securing the mortgage.  BONY failed to promptly facilitate communications with Plaintiff once they were on actual notice of the transfer.  BONY failed to promptly request documents to verify the status of Plaintiff as a successor in interest despite the fact that Plaintiff had already sent all the required documents needed to make this determination.  BONY failed to confirm Plaintiff's status as a successor in interest, and, thus, failed to provide her with all the rights and protections under RESPA and TILA of the original borrower including, but not limited to, refusing to speak with her regarding the status of the loan, denying any requests for loss mitigation opportunities, and timely sending all pre-foreclosure notices.

### DAMAGES:
### ACTUAL DAMAGES

35.     Plaintiff is entitled to recover her actual damages from Defendant for which Plaintiff pleads in an amount which does not exceed the jurisdictional limits of this Court.

### EXEMPLARY DAMAGES

36.     Plaintiff is entitled to recover her exemplary damages from Defendant for which Plaintiff pleads in an amount which does not exceed the jurisdictional limits of this Court.

## ATTORNEYS' FEES

37.     Plaintiff was forced to employ the undersigned attorneys to represent him and has agreed to pay them reasonable attorneys' fees for their services. Plaintiff is entitled to recover her reasonable attorneys' fees pursuant to Chapter 38 of the Texas Civil Practices & Remedies Code and RESPA for which Plaintiff pleads in an amount which does not exceed the jurisdictional limits of this Court.

## CONDITIONS PRECEDENT

38.     All conditions precedent to the Plaintiff's right to bring these causes of action have been performed, have occurred, or have been waived.

## REQUEST FOR DISCLOSURES

39.     Defendant is hereby requested to disclose to Plaintiff, within 50 days of service of this request, the information and material described in Rule 194 of the Texas Rules of Civil Procedure.

## APPLICATION FOR TEMPORARY RESTRAINING ORDER

40.     To the extent not inconsistent herewith, Plaintiff incorporates by reference the allegations made in paragraph 1 through paragraph 38 as if set forth fully herein.

41.     Unless Defendant is enjoined, Plaintiff will suffer probable harm which is imminent and irreparable. More specifically, if not enjoined, Defendant may sell the Property at any time during the pendency of this matter thus depriving Plaintiff of ownership of the Property and potentially causing Plaintiff to be dispossessed of the Property. Defendant has posted Plaintiff's Property at a foreclosure sale on August 6, 2019.  Plaintiff has no adequate remedy at law because the subject matter is real property, and any legal remedy of which Plaintiff may avail herself will

not give her as complete, equal, adequate, and final a remedy as the injunctive relief sought in this Application.

     42.    Therefore, Plaintiff requests that this Court issue a Temporary Restraining Order and, thereafter, a Temporary Injunction, to restrain Defendant from selling, or re-posting, the real property which is the subject matter of this lawsuit and is commonly known as 2534 Splintwood Court, Kingwood, Texas 77345 at a foreclosure sale.

     43.    Plaintiff further requests that, upon trial on the merits, Defendant be permanently enjoined from the same acts listed in Paragraph 42 above.

     44.    Plaintiff is likely to prevail on the merits of the lawsuit as described above.

     45.    The granting of the relief requested is not inconsistent with public policy considerations.

## **BOND**

     46.    Plaintiff is willing to post a reasonable temporary restraining order bond and requests that the Court set such bond

### PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that:

A.    Defendant be cited to appear and answer herein;

B.    The Court conduct a hearing on Plaintiff's Application for Injunctive Relief;

C.    A temporary restraining order be issued restraining Defendant, their agents, employees, and legal counsel, and those acting in concert or participation with Defendant who receive actual notice of the Order, by personal service or otherwise, from selling the real property which is the subject matter of this lawsuit

and is commonly known as 2534 Splintwood Court, Kingwood, Texas 77345 as well as from taking any legal action to evict Plaintiff and any other occupants from, or enforcing a writ of possession regarding, the aforementioned property;

D.   A Permanent Injunction be entered enjoining Defendant from the same acts listed in Paragraph C above; and

E.   Upon final hearing or trial hereof, the Court order a judgment in favor of Plaintiff against Defendant for her actual damages, exemplary damages, reasonable attorneys' fees, all costs of court, and such other and further relief, both general and special, at law or in equity, to which Plaintiff may be entitled.

Respectfully Submitted by,

**Law Office of Erick DeLaRue, PLLC**

By: _____

**ERICK DELARUE**
Texas Bar No: 24103505
2800 Post Oak Boulevard, Suite 4100
Houston, TX  77056
Telephone: 713-899-6727
Email: erick.delarue@delaruelaw.com

**ATTORNEY FOR PLAINTIFF**

8/4/2019 7:58:22 PM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 35674115
By: SALGADO, CAROLINA
Filed: 8/5/2019 12:00:00 AM

CAUSE NO. _____

| | | |
|---|---|---|
| JZAVELA-ARETHEA DOUGHERTY | § | IN THE DISTRICT COURT OF |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| U.S. BANK TRUST, N.A. | § | _____ JUDICIAL DISTRICT |

| | |
|---|---|
| STATE OF TEXAS       § | |
| COUNTY OF HARRIS    § | KNOW ALL THESE BY MEN PRESENTS: |

## DECLARATION OF JZAVELA-ARETHEA DOUGHERTY

1.      "My name is Jzavela-Arethea Dougherty   I am the Plaintiff in the above-captioned lawsuit.  I have read the Plaintiff's Original Petition, Application for Injunctive Relief, and Requests for Disclosures to which this Declaration relates and offer this Declaration in support of the statements and arguments asserted herein.

2.      The subject matter of the lawsuit is the real property and the improvements thereon located at 2534 Splintwood Court, Kingwood, Texas 77345 (the "Property").

3.      My  ex-husband, now deceased, and I purchased the Property on or about February 27, 2009. During the process of purchasing the Property, my husband executed a Note as well as a Deed of Trust in which Network Funding, L.P. is listed as the Lender.

4.      Upon information and belief, the Note and Deed of Trust were subsequently transferred to Wells Fargo Bank, N.A. ("Wells Fargo").

5.      Unfortunately, my then husband and I began to have marital problems and in 2012 and we filed for divorce which was finalized in 2013.  In the divorce decree, I was awarded 75% interest in the Property while my ex-husband retained a 25% interest.  I immediately put Wells Fargo on notice by sending a copy of decree to my loan representative.

6.      Wells Fargo failed to initiate the necessary process for me to assume the loan as I would be the responsible for paying the mortgage.  Of course, at the time, I did not realize this failure would cause me so many problems in the future.  Unfortunately, I had been un-employed at the time of the divorce which forced me to file a bankruptcy so I could reorganize me debt and keep a roof over me and my son's head. During the bankruptcy, I was able to secure  a well paying position which would allow me to pay my mortgage.  The bankruptcy was dismissed in March 2017 and I reached out to Wells Fargo to discuss payment and or loss mitigation options. Wells Fargo was cooperative and began the loss mitigation process by reviewing the loan history to determine what options were available to me; however, upon information and belief, the Note and Deed of Trust was transferred in September 2017 to U.S. Bank Trust, N.A.  ("U.S. Bank") for

which BSI Financial Services ("BSI") was the loan servicer.  All contact with me ceased and with it, my ability to mitigate my position.

7.     Neither U.S. Bank nor BSI reached out to me to inform me that the loan had been transferred until I received a call from a BSI representative, Scott Hansen ("Hansen"), in February 2018 who informed me that the loan was in default and in the foreclosure process. I informed Hansen that I had been in the process of obtaining loss mitigation help from Wells Fargo when the loan was transferred so that I could resume making payments on the mortgage. Hansen responded that since I was not on the mortgage, U.S. Bank/BSI would not be able to speak to me about the loan and would not be able to offer me any options to save me home.  This shocked me because Wells Fargo had never mentioned this as a problem.  I told Hansen that I had been awarded the Property by divorce decree in 2013 and, thus, was the owner and had an interest in the Property.  Hansen informed me that this did not change U.S. Bank's position.

8.     Over the next year and a half, I fought tooth and nail with U.S. Bank to be recognized as a successor in interest so that I could receive all the rights and protections of the original borrower.  I hired several attorneys to help me with this process but U.S. Bank refused to recognize me as a successor in interest and allow me any rights to the mortgage.  As such, U.S. Bank refused to offer me any loss mitigation options as a way to hold on to the Property.

9.     Then, in July 2019, I began to receive a barrage on mail from investors wishing to purchase my Property and lawyers offering to represent me in the coming foreclosure sale of my property.  I was surprised because I had not received any notice from U.S. Bank informing me that my Property had been posted at a foreclosure sale on August 6, 2019.  Apparently, U.S. Bank posted my Property for foreclosure sale without sending me proper and timely notice of default, an opportunity to cure the default, notice of intent to accelerate, notice of acceleration, and notice of foreclosure sale as required by the Texas Property Code thereby violating my due process rights as well as the Deed of Trust.

My name is Jzavela-Arethea Dougherty , my date of birth is

April 13, 1960                                    , and my address is 2534 Splintwood Court, Kingwood, Texas

77345.  I declare under penalty of perjury that the foregoing information is true and correct."

Executed in Harris County, State of Texas, on the ___ day of August, 2019.


_____
JZAVELA-ARETHEA DOUGHERTY

Unofficial Copy Office of Harris County District Clerk

# EXHIBIT 1

Unofficial Copy Office of Marilyn Burgess District Clerk

20090153076
04/14/2009 RP3  $84.00

Unofficial Copy Office of Marilyn Burgess District Clerk

RP 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

After Recording Return To:
NETWORK FUNDING, L.P.
9700 RICHMOND AVENUE, SUITE 320
HOUSTON, TEXAS 77042

Record and Return to:
National TitleNet, LLC
5212 Tennyson Parkway, Suite 110
Plano, TX 75024
GF: 09-00233-NT

[Space Above This Line For Recording Data]

DOUGHERTY
Loan Number 342001090
MIN 100056303429010902

## DEED OF TRUST

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON,
YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING
INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN
REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC
RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE
NUMBER.

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11,
13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated FEBRUARY 27, 2009
together with all Riders to this document.
(B) "Borrower" is MICHAEL S. DOUGHERTY AND WIFE, JZAVELA-ARETHEA DOUGHERTY

Borrower is the grantor under this Security Instrument.
(C) "Lender" is NETWORK FUNDING, L.P.

Lender is a limited partnership organized and existing under the laws of THE STATE OF TEXAS

Lender's address is 9700 RICHMOND AVENUE, SUITE 320, HOUSTON, TEXAS 77042

Lender includes any holder of the Note who is entitled to receive payments under the Note.
(D) "Trustee" is SCOTT R. VALBY.

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3044 1/01 (page 1 of 14 pages)
GV2060.HP

FILED FOR RECORD
8:00 AM

APR 14 2009

County Clerk, Harris County, Texas

Trustee's address is 1700 WEST LOOP SOUTH, SUITE 200, HOUSTON, TEXAS 77027

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of Post Office Box 2026, Flint, Michigan 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated **FEBRUARY 27, 2009**
The Note states that Borrower owes Lender **TWO HUNDRED SIXTY-FOUR THOUSAND EIGHT HUNDRED AND 00/100ths**
Dollars (U.S. $ 264,800.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **APRIL 1, 2039**

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all riders to this Security Instrument that are executed by Borrower. The following riders are to be executed by Borrower [check box as applicable]:

| Adjustable Rate Rider | Condominium Rider | 1 - 4 Family Rider |
| Biweekly Payment Rider | Planned Unit Development Rider | |
| Balloon Rider | Second Home Rider | |
| Other(s) [specify] | | |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                 Form 3044 1/01 (page 2 of 14 pages)
GV2000.HP

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of   HARRIS

LOT FORTY-TWO (42), IN BLOCK TWO (2), OF VILLAGES OF RIVERCHASE, SECTION ONE (1), AN ADDITION IN HARRIS COUNTY, TEXAS ACCORDING TO THE MAP OR PLAT THEREOF RECORDED UNDER FILM CODE NO. 580158 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.
Parcel ID Number: 1267110020042

which currently has the address of   2534 SPLINTWOOD CT
                                            [Street]
KINGWOOD              , Texas   77345      ("Property Address"):
   [City]                       [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3044 1/01 (page 3 of 14 pages)
GV2000.BP

late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3044 1/01 (page 4 of 14 pages)
GV2000.HP

repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3044 1/01 (page 5 of 14 pages)
GV2000.HF

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

TEXAS–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3044 1/01 (page 6 of 14 pages)
GV2000.HP

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3044 1/01 (page 7 of 14 pages)
GV/2000.HP

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a)   Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b)   Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3044 1/01 (page 8 of 14 pages)
GV3000.HP

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3044 1/01 (page 9 of 14 pages)
GV2008.HP

of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated

TEXAS—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3044 1/01 *(page 10 of 14 pages)*
GV2006.HP

Unofficial Copy Office of Harris County Texas

to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3044 1/01 (page 11 of 14 pages)
GV2000.HP

Unofficial Copy

immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public vendue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee; Trustee Liability. All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is wilful.

25. Subrogation. Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

26. Partial Invalidity. In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

27. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property.

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3044 1/01 (page 12 of 14 pages)
GV2000.BF

Unofficial Copy Official Records

Check box as applicable:

☐ **Purchase Money.**

The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

☐ **Owelty of Partition.**

The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of anwelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

☒ **Renewal and Extension of Liens Against Homestead Property.**

The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

☐ **Acknowledgment of Cash Advanced Against Non-Homestead Property.**

The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

☐ **Acknowledgment Regarding Manufactured Home Conversion Lien.**

Owners acknowledge and agree that, to the extent permitted by law, the liens granted or created by this lien document in and to the Property and the manfactured home include, without limitation, a conversion lien under Texas Constitution, Article XVI, § 50(a)(8), and, as applicable, Chapter 63 of the Texas Property Code.

**28. Loan Not a Home Equity Loan.** The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.

TEXAS—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3044 1/01 (page 13 of 14 pages)
GV2000.HP

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)          _____ (Seal)
MICHAEL S. DOUGHERTY          -Borrower          JZAVELA-ARETHEA DOUGHERTY          -Borrower

_____ (Seal)          _____ (Seal)
-Borrower          -Borrower

Witnesses:

_____

_____

[Space Below This Line For Acknowledgment]

_____

STATE OF TEXAS. *Harris*          COUNTY ss:

This instrument was acknowledged before me this 27 day of February,
20 09 , by MICHAEL S. DOUGHERTY and JZAVELA-ARETHEA DOUGHERTY .

My Commission Expires: 4/18/2012          *Wanda L. Weisger*
(Signature of Officer)
(Title of Officer)

WANDA L. WEISGERBER
Notary Public, State of Texas
My Commission Expires
April 18, 2012

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
GV2000.MF

Form 3044 1/01 (page 14 of 14 pages)

Unofficial Copy Office of Marilyn Burgess District Clerk

# EXHIBIT 2

Unofficial Copy Office of Marilyn Burgess District Clerk

*FILED 7/15/2019 12:34:29 PM    FRCL-2019-5626    DIANE TRAUTMAN, COUNTY CLERK, HARRIS COUNTY, TEXAS*

## NOTICE OF FORECLOSURE SALE

Notice is hereby given of a public non-judicial foreclosure sale.

1. **Property To Be Sold.**   The property to be sold is described as follows:

LOT FORTY-TWO (42), IN BLOCK TWO (2), OF VILLAGES OF RIVERCHASE, SECTION ONE (1), AN ADDITION IN HARRIS COUNTY, TEXAS ACCORDING TO THE MAP OR PLAT THEREOF RECORDED UNDER FILM CODE NO. 580158 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

2. **Date, Time, and Place of Sale.**   The sale is scheduled to be held at the following date, time, and place:

**Date:**   August 6, 2019

**Time:**   The sale shall begin no earlier than 1:00 P.M. or no later than three hours thereafter.  The sale shall be completed by no later than 4:00 P.M.

**Place:**   HARRIS County, in Houston, Texas, at the Bayou City Event Center, 9401 Knight Road, Houston, Texas, approximately 5,050 square feet of area of the Bayou City Event Center beginning at the southeast corner of the large ballroom and continuing westerly along the south wall a distance of approximately 87 feet and; thence northerly a distance of approximately 58 feet; then easterly approximately 87 feet to the east wall; thence southerly approximately 59 feet to the point of beginning, or if the preceding area is no longer the designated area at the area most recently designated by the County Commissioner's Court, pursuant to 51.002 of the Texas Property Code as the location and address where the sale is to be held.  The sale shall take place in the area designated by the Commissioners Court, pursuant to Section 51.002 of the Texas Property Code, as the place where foreclosure sales are to take place.  If no place is designated by the Commissioners Court, sale will be conducted at the place where the Notice of Trustee's Sale was posted.

3. **Terms of Sale.**   The sale will be conducted as a public auction to the highest bidder for cash, subject to the provisions of the deed of trust permitting the beneficiary thereunder to have the bid credited to the note up to the amount of the unpaid debt secured by the deed of trust at the time of sale.  Those desiring to purchase the property will need to demonstrate their ability to pay cash on the day the property is sold.  If a purchaser desires to pay with cashier's checks, they should be made payable to Anderson Vela, L.L.P. or endorsed in accordance with the instructions by the Trustee.  The purchase price in a sale held by the undersigned herein is payable immediately on acceptance of the bid by the undersigned trustee or substitute trustee.  The sale will be made expressly subject to any title matters set forth in the deed of trust, but prospective bidders are reminded that by law the sale will necessarily be made subject to all prior matters of record affecting the property, if any, to the extent that they remain in force and effect and have not been subordinated to the deed of trust. For the avoidance of doubt, the Foreclosure Sale will not cover any part of the Property that has been released of public record from the lien and/or security interest of the Deed of Trust. Prospective bidders are strongly urged to examine the applicable property records to determine the nature and extent of such matters, if any. Pursuant to section 51.0075(a) of the Texas Property Code, Substitute Trustee reserves the right to set further reasonable conditions for conducting the Foreclosure Sale.  Any such further conditions shall be announced before bidding is opened for the first sale of the day held by Substitute Trustee. If the Foreclosure Sale is passed, notice of the date of any rescheduled foreclosure sale will be reposted and refiled in accordance with the posting and filing requirements of the Deed of Trust and the Texas Property Code.

4.    The Deed of Trust may encumber both real and personal property.  Notice is hereby given of Holder's election to proceed against and sell both the real property and any personal property described in the Deed of Trust is in accordance with the Holder's rights and remedies under the Deed of Trust and **Section 9.604 of the Texas Business and Commerce Code.**

DIANE TRAUTMAN, COUNTY CLERK, HARRIS COUNTY, TEXAS

FRCL-2019-5626

FILED 7/15/2019  12:34:29 PM

5.      Pursuant to section 51.009 of the Texas Property Code, the property will be sold in "as is, where is" condition, without any express or implied warranties, except as to the warranties of title (if any) provided for under the deed of trust. Prospective bidders are advised to conduct an independent investigation of the property.

Pursuant to section 51.0075 of the Texas Property Code, the trustee reserves the right to set further reasonable conditions for conducting the sale. Any such further conditions shall be announced before bidding is opened for the first sale of the day held by the trustee or any substitute trustee.

6.      <u>Type of Sale</u>.    The sale is a non-judicial deed of trust lien and security interest foreclosure sale being conducted pursuant to the power of sale granted by the Deed of Trust/Security Instrument ("Deed of Trust") executed by Michael S. Dougherty and Izavela-Aretha Dougherty (Pro Forma) ("Debtor"). Said Deed of Trust secures a Promissory Note/Loan Agreement, and any renewals, extensions or modifications thereof, dated February 27, 2009 and executed by Debtor in the Original Principal Amount of $264,800.00. The current beneficiary of the Deed of Trust is U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE IGLOO SERIES III TRUST, 7505 Irvine Center Drive, Suite 200, Irvine, CA 92620. The Deed of Trust is dated February 27, 2009, designating Scott R. Valby as the Original Trustee and is recorded in the office of the County Clerk of HARRIS County, Texas, under Instrument No. 20090153076, of the Real Property Records of HARRIS County, Texas. The foreclosure of this mortgage is being administered by a mortgage servicer representing the mortgagee under a servicing agreement. Questions concerning the sale may be directed to the undersigned, Richard E. Anderson, 4920 Westport Drive, The Colony, Texas 75056, who sent this notice, or to the mortgage servicer, BSI Financial Services, 7505 Irvine Center Drive, Suite 200, Irvine, CA 92620.

7.      <u>Default and Request To Act</u>.      Default has occurred under the deed of trust, and the beneficiary has requested me, as Substitute Trustee, to conduct this sale. Notice is given that before the sale the beneficiary may appoint another person substitute trustee to conduct the sale.

8.      Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.

DATED   7/3/19



Lee Carroll,
Richard E. Anderson, Ray Vela, or Cesar DeLaGarza

4920 Westport Drive
The Colony, Texas 75056
214.276.1545 - telephone
214.276.1546 - facsimile
Substitute Trustees

BSI/XXXXXX6776

CAUSE NO. 2019-53348

| | | |
|---|---|---|
| **JZAVELA-ARETHEA KAY-DIU** | § | **IN THE DISTRICT COURT** |
| **DOUGHERTY-WILLIAMS,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | |
| | § | **281st JUDICIAL DISTRICT** |
| | § | |
| **US BANK TRUST, N.A.,** | § | |
| **Defendant.** | § | **HARRIS COUNTY, TEXAS** |

## DEFENDANT'S ORIGINAL ANSWER

Comes now Defendant U.S. BANK AND TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE IGLOO SERIES III TRUST ("U.S. Bank")(incorrectly named U.S. Bank Trust, N.A.) and files its Original Answer.

Defendant U.S. Bank denies generally every allegation contained in Plaintiff's Live Petition and demand strict proof by a preponderance of the credible evidence.

## DEFENSES

Without assuming the burden of proof, Defendant asserts the following defenses:

Plaintiff's Live Petition fails to state a claim upon which relief can be granted.

Plaintiff's claims are barred because Plaintiff has not been damaged by the conduct or alleged conduct of Defendant.

Defendant is not liable to Plaintiff on the grounds that Plaintiff's damages, if any, were caused in whole or in part by Plaintiff's own conduct and/or negligence. Therefore, Defendant is entitled to a determination of proportionate responsibility under Chapter 33 of the Texas Civil Practice and Remedies Code and applicable Texas law.

Defendant denies responsibility or liability for any alleged damages sustained by Plaintiff. However, if Plaintiff sustained any damages, then such damages should be reduced by

---

the amount that Plaintiff could reasonably have mitigated such damages and/or Plaintiff's failure to mitigate damages.

Plaintiff's claims are barred, in whole or in part, by the express or implied terms of the written agreement(s) between the parties.

Plaintiff's claims are barred by reason of Defendant's compliance with applicable loan documents, contracts, mortgage, agreements, statutes, and other provisions of law.

Defendant acted in good faith at all times, and Defendant did not knowingly, intentionally, or maliciously violate any laws.

Plaintiff's claims are barred, in whole or in part, by Plaintiff's lack of actual damages.

Plaintiff's claims are barred in whole or in part by the statute of frauds, parol evidence rule, and merger doctrine.

Plaintiff's claims are barred by unclean hands, laches, waiver, estoppel (in all its forms, including, but not limited to equitable estoppel and/or estoppel by contract), and other applicable concepts of law.

Plaintiff's claims are barred in whole or in part by the doctrines of accord and satisfaction, release and/or ratification.

Plaintiff's claims are barred in whole or in part by the doctrine of offset.

Plaintiff's claims are barred in whole or in part by the applicable statute of limitations.

Plaintiff's claims are barred in whole or in part by the doctrine of bona fide error.

Plaintiff's claims for declaratory judgment because Plaintiff has not tendered, and cannot tender, all amounts due and owing on the mortgage loan and because the foreclosure at issue in this case that is being contested was legal and proper.

Any claim for punitive or exemplary damages is subject to the limitations and constraints of Due Process found in the Fifth and Fourteenth Amendments to the United States Constitution and Article I, § 19 of the Texas Constitution.

Plaintiff has failed to state a claim for recovery of attorneys' fees and costs.

Defendant pleads such other affirmative defenses which cannot be anticipated at this time, but which may become apparent and applicable during the pendency of this lawsuit, by reason of future discovery and by reason of allegations and answers of other parties. Defendant specifically reserves the right to amend or supplement these affirmative defenses at any time.

For further answer, if any is necessary, Defendant alleges that Plaintiff is estopped from asserting the claims made the basis of Plaintiff's live petition pursuant to the doctrines/defenses of equitable estoppel, estoppel by contract, release, ratification, failure to mitigate, statute of frauds, lack of standing and waiver.

## SPECIAL EXCEPTIONS

Defendant submits the following exceptions to Plaintiff's Live Petition in the instant case:

1.    Plaintiff's allegations are so general that Defendant does not have fair notice of the claims being made;

2.    Plaintiff has failed to state any claim upon which relief can be granted;

3.    Plaintiff has plead no viable claim for damages and has stated no claim upon which she could recover damages;

4.    Plaintiff lacks standing;

5.    Plaintiff has failed to identify the alleged contract at issue in this case and has failed to state specifically how the alleged contract was breached causing Plaintiff damages; and

6.      Plaintiff's pleadings do not state the facts and elements necessary to support a cause of action.

## REQUEST FOR INCREASE OF BOND

In the event the court extends any injunction prohibiting a non-judicial foreclosure sale of the property and/or any eviction, Defendant moves that the court reset the bond amount in this case to a reasonable amount because the amount set is too low.

## REQUESTS FOR MONTHLY PAYMENTS

Defendant further moves that the court require the Plaintiff to make reasonable monthly payments into the registry of the court and that such payment obligation is continued until such time as this case is concluded.

## REQUESTS FOR DISCLOSURE

Defendant, pursuant to Rule 194 of the Texas Rules of Civil Procedure, serves this Request for Disclosure upon Plaintiff, requesting that Plaintiff disclose, within thirty (30) days of service of this Request, the information or material described in Rule 194.2 (a) - (l) of the Texas Rules of Civil Procedure.

## PRAYER

Defendant prays the Court, after notice and hearing or trial, enter judgment in favor of U.S. Bank, including, but not limited to the costs of court, attorney's fees, U.S. Bank further prays that Plaintiff in this suit takes nothing by way of her claims and that all of the Plaintiff's claims are dismissed with prejudice,   Defendant further prays that Plaintiff's requests for injunctive relief are all denied; Defendant further prays for such other and further relief as Defendant U.S. Bank may be entitled to in law or in equity.

Respectfully submitted,

ANDERSON ★ VELA, L.L.P.
4920 Westport Drive
The Colony, Texas 75056
214.276.1545 – Telephone
214. 276.1546 – Facsimile
RVela@AndersonVela.com – E-mail

ATTORNEYS FOR DEFENDANT


By: */s/ Ray L. Vela*                           .
    RAY L. VELA
    State Bar No. 00795075


## CERTIFICATE OF SERVICE

I certify that on this the 14th day of August 2019, a true copy of the above document has been delivered in person to the following pursuant to the Texas Rules of Civil Procedure for each party listed below.


ERICK DELARUE          VIA E-FILING SERVICE AND/OR
2800 POST OAK BLVD, SUITE 4100    VIA E-MAIL:
HOUSTON, TEXAS 77056        ERICK.DELARUE@DELARUELAW.COM


By:   */s/ Ray L. Vela*                       .
      RAY L. VELA

## **EXHIBIT "3"**

ALL ORDERS SIGNED BY THE STATE JUDGE

Attached:

Temporary Restraining Order

8/5/2019 1:02 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 35691642
By: Brittany Hall
Filed: 8/5/2019 1:02 PM

CAUSE NO. 2019-53348

| | | |
|---|---|---|
| **JZAVELA-ARETHEA DOUGHERTY** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **U.S. BANK TRUST, N.A.** | § | **281st JUDICIAL DISTRICT** |

## TEMPORARY RESTRAINING ORDER

ON THIS DATE the Plaintiff's Application for Temporary Restraining Order that was incorporated into and pled in Plaintiff's Original Petition, Application for Injunctive Relief, and Request for Disclosures ("Petition") in this cause, was heard and considered before this Court.

Based upon the pleadings, exhibits, records, and documents filed by Plaintiff and presented to the Court, as well as the arguments of legal counsel at the hearing, IT CLEARLY APPEARS THAT:

A. Unless U.S. Bank Trust, N.A. ("Defendant"), their agents, employees, directors, shareholders, and legal counsel is/are immediately enjoined and restrained, Defendant may sell the Property at any time during the pendency of this matter thus depriving Plaintiff of ownership of the Property identified and described in the Petition and potentially causing Plaintiff to be dispossessed of the Property. Plaintiff will suffer an immediate and irreparable harm and will have no adequate remedies under the law, and Defendant may commit the foregoing before notice and hearing on Plaintiff's Application for Temporary Injunction.

B.     Plaintiff will suffer an irreparable harm if Defendant, their agents, employees, directors, shareholders, and legal counsel are not restrained immediately because Defendant will sell the property at a foreclosure sale on August 6, 2019 which is real property and Plaintiff's residence, which is unique and irreplaceable, and there is no adequate remedy at law to grant Plaintiff complete, final, and equitable relief.

C.     Plaintiff has put Defendant's representative on notice of this hearing at least 2 hours before the hearing was scheduled.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Defendant, their agents, employees, directors, shareholders, and legal counsel are hereby ORDERED to immediately cease and desist from taking any further action in pursuit of selling the Property which is the subject matter of this lawsuit and is commonly known as 2534 Splintwood Court, Kingwood, Texas 77345 at ~~the August 6~~ (*) foreclosure sale. Defendant, their agents, employees, directors, shareholders, and legal counsel are hereby immediately enjoined and restrained from the date of entry of this Order until fourteen (14) days hereafter, or until further ordered by this Court.

**IT IS FURTHER THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Application for Temporary Injunction be heard on the 16th day of August, 2019 starting at 1:30 ~~a.m.~~/p.m. in the courtroom of the 281st District Court of Harris County located at in the Harris County Courthouse, 201 Caroline Street, Houston, Texas 77002, and that Defendant is commanded to appear at that time and show cause, if any, why a temporary injunction should not be issued against Defendant.

(*) Nothing in this Order prohibits defendant from re-posting for foreclosure at the earliest opportunity.

The Clerk of the above-entitled court shall issue a notice of entry of a temporary

restraining order in conformity with the law and the terms of this Order, to include a copy of this

Order, upon the filing by Plaintiff of the bond hereinafter set. *this Order expires August 20, 2019,*
*at 9:47 a.m., absent further Order of the Court.*
This Order shall not be effective until Plaintiff deposits with the Harris County District

Clerk, a bond in the amount of $ _1,000.00_ . in due conformity with applicable law.  The bond

may be in the form of cash, cashier's check, or a check drawn from operating account of

Plaintiff's attorney's law firm.


SIGNED and ENTERED this the ___6th___ day of August, 2019, at __9:47__ ~~a.m./p.m.~~

_____
JUDGE PRESIDING
*Ancillary*

CAUSE NUMBER  2019- 53348

Izavela-Arethea Dougherty §          IN THE DISTRICT COURT OF
          PETITIONER           §
                               §          HARRIS COUNTY, TEXAS
                VS.            §
US BANK                        §          281st JUDICIAL DISTRICT
          RESPONDENT

## CLERK'S CERTIFICATE OF CASH DEPOSIT IN LIEU
## OF INJUNCTION BOND PER ORDER OF THE COURT

**THE STATE OF TEXAS §**
**COUNTY OF HARRIS  §**

**THIS DOCUMENT IS TO CERTIFY** that I, the undersigned Clerk of the District Courts of Harris County, Texas have received a cash deposit, as ordered by the Court, in the amount of **One THousand** Dollars ($ **1000.00** ), to be deposited with the Registry of the Court in lieu of a Temporary Restraining Order Bond or a Temporary Injunction Bond, as required by Rule 684. T.R.C.P. in the above styled and numbered cause as provided by the order entered on the **6** day of **August** , 219

This cash deposit is made and received in lieu of TEMPORARY RESTRAINING ORDER or TEMPORARY INJUCTION, conditioned that the applicant will abide the decision which may be made in the cause, and that he will pay all sums of money and costs that may be adjudged against him if the restraining order or temporary injunction shall be dissolved in whole or in part, and this certificate is issued to have the force and effect of a TEMPORARY RESTRAINING ORDER BOND OR A TEMPORARY INJUCTION BOND in accordance with the Order of the Court.

**WITNESS** my hand and seal of office this **6th** day of **August** A.D. 20 **19** .

**FILED**
Marilyn Burgess
District Clerk

AUG 0 6 2019

Time: _____
Harris County, Texas
By _____
Deputy

Marilyn Burgess, District Clerk
Harris County, Texas
Po Box 4651
Houston, Texas 77210-4651

By: _____
**Deputy District Clerk**

Principal: **Erick DeLaRue**

Attorney: **Erick DeLa Rue**
Bar Number: **24103505**

Page 1 of 1

# **EXHIBIT "4"**

THE DOCKET SHEET

See attached State Court Docket Sheet

**HCDistrictclerk.com**   DOUGHERTY, JZAVELA-ARETHEA vs. U S BANK      8/14/2019
TRUST N A
Cause: 201953348      CDI: 7      Court: 281

## JUDGMENT/EVENTS

| Date | Description | Order Signed | Post Jdgm | Pgs | Volume /Page | Filing Attorney | Person Filing |
|------|-------------|--------------|-----------|-----|--------------|-----------------|---------------|
| 8/6/2019 | ORDER SETTING BOND SIGNED | 8/6/2019 | | 3 | | | |
| 8/6/2019 | ORDER SIGNED SETTING HEARING | 8/6/2019 | | 3 | | | |
| 8/6/2019 | MOTION FOR TEMPORARY RESTRAINING ORDER GRANTED | | | 0 | | | |
| 8/6/2019 | APPEARANCE ON TEMPORARY INJ OR TEMPORARY RESTRAINING ORD | | | 0 | | | |
| 8/6/2019 | ORDER SIGNED GRANTING TEMPORARY RESTRAINING ORDER | 8/6/2019 | | 3 | | | |
| 8/5/2019 | ORIGINAL PETITION | | | 0 | | DELARUE, ERICK JOSEPH | DOUGHERTY, JZAVELA-ARETHEA |

## **EXHIBIT "5"**

### INDEX OF MATTERS BEING FILED

Exhibit 1        Copy of Citation and Executed Process in the Case

Exhibit 2        Plaintiffs Original Petition, Application for Injunctive Relief and Request for Disclosures

Exhibit 2        Defendants' Original Answer

Exhibit 3        Temporary Restraining Order

Exhibit 4        Court's Docket Sheet

Exhibit 5        This Exhibit

Exhibit 6        List of Counsel of Record

## EXHIBIT "6"

## LIST OF ALL COUNSEL OF RECORD

1.      Plaintiff is being represented by the following attorney:

ERICK DELARUE
Tx State Bar No. 24103505
2800 POST OAK BLVD, SUITE 4100
HOUSTON, TEXAS 77056
713-899-6727 – Telephone
E-mail: ERICK.DELARUE@DELARUELAW.COM

2.      Defendant is being represented by the following attorneys:

RAY L. VELA
State Bar No. 00795075
S.D. Tex. Fed ID No. 20354
RVela@AndersonVela.com – E-mail
RICHARD E. ANDERSON
Texas State Bar No. 01209010
RAnderson@AndersonVela.com  – e-mail
ANDERSON ★ VELA, L.L.P.
4920 Westport Drive
The Colony, Texas 75056
214.276.1545 – Telephone
214. 276.1546 – Facsimile